IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LEE HOLMES, aka
JAMES L. DAVIS,

        Petitioner,

  vs.

J. VALADEZ, Acting Warden,

        Respondent.

No. C 02-4566 JSW (PR)

**ORDER DENYING
PETITION FOR WRIT OF
HABEAS CORPUS AND
DENYING PETITIONER'S
PENDING MOTIONS**

(Docket Nos. 21, 22)

## INTRODUCTION

Petitioner, a state prisoner incarcerated at the California Medical Facility at Vacaville, filed a pro se petition on September 19, 2002, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 24, 2003, this Court ordered Respondent to show cause why the writ should not be granted (docket no. 6). On July 10, 2003, Respondent filed an answer to the petition (docket no. 13). Petitioner filed a traverse on July 25, 2003 (docket no. 19). This order denies the petition for a writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

Petitioner was convicted by a Santa Clara County jury of two counts of first degree burglary under California Penal Code sections 459 and 460, subdivision (A). (Clerk Tr. 586-88, 592.) The jury found that Petitioner suffered ten prior strike convictions for prior residential burglaries under California Penal Code sections 667(b)-(I) and 1170.12. (Clerk Tr. 589-94.) The trial court denied probation and sentenced

1    Petitioner to eight five-year prior serious felony conviction enhancements and two

2    consecutive terms of twenty-five years-to-life pursuant to the Three Strikes Law,

3    amounting to a total of ninety years to life. (Clerk Tr. 664-66.)  On direct appeal, the

4    California Court of Appeal, Sixth Appellate District, affirmed the conviction.  The

5    California Supreme Court denied review on June 12, 2002.  Petitioner sought habeas

6    corpus relief from the state courts.  On November 26, 2002, the California Supreme

7    Court denied his state habeas petition.

8                                    **FACTUAL BACKGROUND**

9         The facts underlying the commitment offense, as found by the Court of Appeal of

10   the State of California, Sixth Appellate District, are summarized below as follows:

11        Linda Marsh returned to her home one afternoon at approximately 2:00
          p.m. [on November 8, 1997].  She saw a Black man 18 feet away from her
12        carrying something wrapped in her flannel nightshirt under his left arm.  When the
          two passed each other they exchanged "hellos." Marsh reached her front door and
13        saw that the door was open.  She entered her home and saw that her VCR was
          missing.  She also saw that her second VCR had been disconnected, dresser
14        drawers were open, and a screen had been removed from the master bedroom
          window.  At the police station, Marsh identified from a photo lineup a person
15        whom she though was the one she had seen outside her home.  The photo was not
          of defendant, and Marsh was only 80 percent certain of the identification.
16        Fingerprints removed from the screen and a windowsill matched defendant's
          fingerprints.  At the preliminary hearing, Marsh immediately recognized
17        defendant as the man she had seen outside her home.  She so testified.  And she
          again identified defendant at trial.
18        [On December 1, 1997,] Police officers responded to a call from neighbors
          and saw defendant exit Tim Weir's residence carrying a television, VCR, and
19        electronic devices.  They apprehended defendant after a chase.  They found
          defendant's fingerprints on a removed window screen and a windowsill.
20        On January 28, 1999, the trial court appointed Dr. Rudolph Cook, Ph.D. to
          examine defendant pursuant to section 1368.  On February 17, Dr. Cook filed his
21        report, which opined that defendant was competent to stand trial.  The trial court
          found defendant competent to stand trial.
22        During trial on October 12, 1999, the trial court called a hearing outside the
          presence of the jury to determine whether defendant was able to continue given
23        that defendant had caused delays by indicating that he was too sick to continue.  It
          called Efren Garza as a witness.
24        Garza indicated the following: he was the nurse manager of the main jail
          health services; he was involved in defendant's health care; his duties included
25        overseeing that defendant obtained several medications, primarily diabetes
          medication; he asked Dr. William Estrin, the medical doctor for the main jail
26        health services, to examine defendant because defendant, who suffered from
          AIDS, believed that he had pneumonia; Dr. Estrin reported that defendant had a

27

28                                              2

slight amount of fluid in his left ear and prescribed medication.

Defendant objected to Garza's testimony as hearsay to the extent that Garza related what Dr. Estrin had said to him or written in a report. The trial court remarked: "I think we can have the doctor over. I was told that he had obviously patients to see in the jail and I was in the hopes that the supervisor could testify." It sustained the objection. After more foundation as to Garza's qualifications as an expert, the trial court indicated that it would admit the evidence over defendant's objection. During the colloquy, defendant argued that, if the trial court admitted the evidence, he was entitled to call Dr. Estrin as a witness. The trial court inquired whether defendant had contacted Dr. Estrin, and defendant offered that he had not done so. The trial court then overruled the objection.

The trial court asked defense counsel whether defendant could continue. Defense counsel then moved for a competency hearing pursuant to section 1368. The trial court convened an in camera hearing in chambers. Trial counsel stated that defendant's demeanor had changed in the last couple of months to evince a preoccupation with the idea that the federal courts would order his release and he, defendant, would sue the state, county, district attorney, and alternate public defender for a conspiracy to violate his federal constitutional rights. He added that defendant had asked him to file numerous motions in federal court, some of which counsel had advanced in the in limine proceedings. He also noted that defendant had become less cooperative in recent weeks and expressed a belief that he, defendant, was not being given his proper medication in jail. He indicated that defendant was moaning during the testimony of Garza. He opined that defendant was suffering from AIDS-related dementia, was delusional, and was not competent to stand trial.

The trial court reconvened in the courtroom and denied the motion. It explained: "This case has been pending since December 1, 1997. Approximately 50 days have elapsed since the case has been filed and the defendant arrested. And the case was assigned to this department on September 29, 1999, this year. Since the trial started, the Court has had an opportunity to review the written materials filed by the defendant himself and has exchanged comments with the defendant in making rulings on the motions filed. The Court has observed the defendant during the time since the case was assigned to this department. The Court has noted the defendant to be alert and active and participating in the trial and vitally interested in the legal issues that were presented by this case. The Court today heard medical testimony regarding two referrals of the defendant to Health Services at the county jail on the 5th of October and again on the 12th of October. The testimony indicated in each case the defendant exhibited no confirmation of his articulation of his mental - medical problems - excuse me. And so the Court believes that at this point there is no medical reason why the defendant cannot continue with the trial. Further on the reasons in the Court's thought process concerning the 1368 request, the defendant was referred pursuant to Penal Code section 1368 early this year, and in a report prepared by Dr. Cook was found to be competent on February 17, 1999. No reasons were disclosed during the in-camera proceedings as to why any circumstances have changed since that report was issued. And in reviewing the report by Dr. Cook, the Court could find no reason to believe that the defendant was not competent then and again is not competent now. During the trial, has gone on since the beginning, the Court has observed the defendant taking an active role in the selection of the jury and has noticed exchange of information between the defense attorney and the defendant and believes that the defendant is active in his participation in this case.

3

For those reasons, the Court is making its own observations in this matter, finds the necessity for a referral pursuant to Penal Code section 1368 simply is lacking based on the Court's observations.  And I will deny the request based on those observations as articulated at this time."

Defense counsel then noted that defendant's arms were folded on the table, defendant's head was on the table, and defendant appeared unable to communicate.  He again requested a section 1368 hearing, arguing that he presented substantial evidence of doubt.  The trial court indicated that it would rely on the previous ruling, called the jury into the courtroom, and took a brief recess.  When the jury was seated, defendant said to the jury words to the effect that "They won't let me see a doctor, they're fabricating evidence against me, they're trying to kill me, they're denying me my rights, they're trying to send me to prison for 150 years, please help me."

When the trial court returned and learned what had happened, it excused the jury. It then admonished defendant and warned that it would order him to a holding cell if he continued to disrupt the proceedings.  It then called Dr. Estrin as a witness.  Dr. Estrin indicated that he had examined defendant that morning for pneumonia and found a slight bulge in the eardrum and prescribed medication.  He also indicated that defendant complained of fatigue.  He further stated that defendant was alert and articulate and evinced no mental impairment.  The trial court then reaffirmed the denial of defendant's section 1368 motion.

The trial court called back the jury.  When the jury was seated, defendant exclaimed: "The Court has refused to let me see a doctor again.  They will not give me medical treatment."  He added: "I'm denied all my rights.  I am sitting here sick and I am dying."  He concluded: "They're trying to send me to jail for 100 years to life.  They're trying to kill me for no reason.  I need to see a doctor.  They won't let me see a doctor.  I hate you."  The trial court ordered defendant removed from the courtroom.  It turned on the holding cell monitor so defendant could listen to the proceedings.

(Resp. Exh. B.4) (*People v. Holmes*, No. H021031, slip op. at 2, 5-8 (Cal. Ct. App., March 14, 2002.))

## **STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of

4

the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

5

*LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, there is a somewhat different standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002); *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

The federal court need not otherwise defer to the state court decision under AEDPA: "A state court's decision on the merits concerning a question of law is, and should be, afforded respect. If there is no such decision on the merits, however, there is nothing to which to defer." *Greene*, 288 F.3d at 1089. In sum, "while we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001), *abrogated on other grounds by Mancuso v. Olivarez,* 292 F.3d 939, 944 n.1 (9th Cir. 2002). A summary decision by a state court does not "implicitly" make any factual findings in support of the decision. *Id.* at 913.

## DISCUSSION

### I.    California's Application of the Three Strikes Law

Petitioner contends that California's application of the Three Strikes law violates the Double Jeopardy and Ex Post Facto clauses of the Constitution. Petitioner further asserts that the Three Strikes law violates the constitutional guarantees of separation of powers, due process, and protection from cruel and unusual punishment. Petitioner also

1   challenges the Three Strikes law as overbroad.

2       The California Supreme Court did not issue a reasoned decision on its summary

3   denial of Petitioner's challenges to the Three Strikes law presented in his habeas petition.

4   Because there is no reasoned explanation of the State court's decision, the Court must

5   review the record independently to determine whether the State court's decision was

6   objectively reasonable.  *See Himes*, 336 F.3d at 853.

7       **A**.      **Double Jeopardy Clause**

8       In his first claim, Petitioner contends that the Three Strikes law violates the

9   Double Jeopardy Clause and the doctrine of collateral estoppel "by using the factual case

10  information earlier adjudicated." (Pet. 3(b).)  The constitutional guarantee against

11  double jeopardy includes the concept of collateral estoppel.  *See Ashe v. Swenson*, 397

12  U.S. 436, 445 (1970); *United States v. James*, 109 F.3d 597, 600 (9th Cir. 1997); *Newton

13  v. Superior Court of California*, 803 F.2d 1051, 1057 (9th Cir. 1986), *cert. denied*, 481

14  U.S. 1070 (1987).

15      With regard to this claim, both the Supreme Court as well as the Ninth Circuit

16  Court of Appeals have found that the use of prior convictions to enhance sentences for

17  subsequent convictions does not violate the Double Jeopardy Clause.  *See Spencer v.

18  Texas*, 385 U.S. 554, 560 (1967) (upholding use of prior convictions to enhance

19  sentences for subsequent convictions even if in a sense defendant must relitigate in

20  sentencing proceeding conduct for which he was already tried).  Any such challenge is

21  wholly without merit.  *See Jackson v. Nelson*, 435 F.2d 553, 553 (9th Cir. 1971)

22  (dismissing contentions of equal protection, bill of attainder, double jeopardy and ex post

23  facto against recidivist statute as meritless).  Accordingly, the California Supreme

24  Court's denial of this claim was not contrary to, or an unreasonable application of,

25  clearly established federal law, and therefore must be denied.

26  //

27

28                                                      7

**B.** <u>**Ex Post Facto Clauses**</u>

In his second claim, Petitioner argues that "[t]he 3-strikes law has aggravated [Petitioner's] past prior offenses and made them greater than they were when he was first convicted of them" in violation of the Ex Post Facto Clause.  (Pet. 16.)

The United States Constitution prohibits the federal government and the states from passing any "ex post facto Law."  U.S. Const., Art. I, § 9, cl. 3 (federal government); Art. I, § 10, cl. 1 (states).  These clauses prohibit the government from enacting laws with certain retroactive effects: any law that (1) makes an act done before the passing of the law, which was innocent when done, criminal; (2) aggravates a crime or makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  *See Stogner v. California*, 539 U.S. 607, 611-12 (2003) (citing *Calder v. Bull*, 3 Dall. 386 (1798)); *Carmell v. Texas*, 529 U.S. 513, 519-538 (2000) (discussing *Collins v. Youngblood*, 497 U.S. 37 (1990), *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925) and *Calder v. Bull*, 3 Dall. 386 (1798)).  The Ex Post Facto Clauses are designed to prevent manifestly unjust and oppressive retroactive effects.  *Stogner*, 539 U.S. at 610-11.

The state's application of an enhancement due to a prior conviction is not a violation of the Ex Post Facto Clause of the United States Constitution.  *See McDonald v. Massachusetts*, 180 U.S. 311, 312-13 (1901); *Fong v. United States*, 287 F.2d 525, 526 (9th Cir.), *cert. denied*, 366 U.S. 971 (1961); *see also United States v. Sorenson*, 914 F.2d 173, 174 (9th Cir. 1990) (dismissing ex post facto challenge as meritless), *cert. denied*, 498 U.S. 1099 (1991).  The enhancement is not a penalty for the prior offense.  *See McDonald*, 180 U.S. at 312-13.  It is the repetitive nature of the present offense that

the enhancement punishes. *See id.* "The statute, imposing a punishment on none but future crimes, is not *ex post facto*." *Id.* at 313 (emphasis in original). Therefore, the California Supreme Court's decision denying this claim was not contrary to, or an unreasonable application of, clearly established federal law, and this claim must be denied.

**C.    Separation of Powers**

In support of his third claim, Petitioner argues that by enacting the Three Strikes law, "[t]he legislative branch has mandated that the prosecution charge all known prior felony convictions in both subdivisions (f)(1) and (g) of penal code section 667," and has extended into the charging function of the state's executive branch, in violation of the separation of powers doctrine. (Pet. at 22.)

 A writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac,* 456 U.S. 107, 119 (1982)), *cert. denied*, 478 U.S. 1021 (1986). It is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Engle*, 456 U.S. at 119; *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994).

Petitioner's claim that California's Three Strikes law violates separation of powers between the California executive and legislative branches of government is a state law claim that is not cognizable in a federal petition for a writ of habeas corpus. Accordingly, this claim is denied.

**D**.    **Due Process**

In his fourth claim, Petitioner contends that "the state created a protected liberty interest . . . in the statute of limitations laws annexed to those past convictions" of the enhancement offenses, and that the sentence enhancement for those prior convictions

violated his due process rights.  (Pet. 25-27.)  This claim is premised on the incorrect assumption that the sentence enhancement punishes his prior offenses.  An enhancement for a prior offense is not a penalty for the prior offense, but rather for the current offense.  *See Nichols v. United States,* 511 U.S. 738, 747 (1994); *McDonald v. Massachusetts*, 180 U.S. 311, 312-13 (1901).  Specifically, it is the repetitive nature of the current offense that the enhancement punishes.  *See id.*  In sum, the use of a prior conviction to enhance a sentence is not an "'additional penalty for the earlier crimes' but 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."  *Monge v. California*, 524 U.S. 721, 728 (1998) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)).  Consequently, the enhancement of Petitioner's sentence is not punishment for his having committed the prior offenses for which he was convicted, but rather for his commission of new offenses thereafter, in other words, recidivism.  Because Petitioner is not being punished for his prior convictions, his sentence does not violate any protected liberty interest with respect to those convictions.

Petitioner further contends that he had "no fair notice," at the time of his earlier plea agreements, that those convictions "could in the future be aggravated."  (Pet. 26.)  Petitioner argues that his prior plea agreements for his prior convictions created a "due process 'liberty interest' that is entitled to minimum procedural protection."  *Id.* at 27-28.  While due process requires that a defendant be informed of all the direct consequences of a guilty plea, *see Brady v. United States*, 397 U.S. 742, 749 (1970); *United States v. Neely*, 38 F.3d 458, 461 (9th Cir. 1994), there is no violation of due process where a trial court fails to inform him or her of collateral consequences. *See Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988).  Because the potential for enhancement in the future is a collateral consequence of the plea, due process did not require that Petitioner be advised of the possibility that a future sentence for a future conviction could be enhanced. *United States v. Garrett*, 680 F.2d 64, 65-66 (9th Cir. 1982).  Accordingly, the fact that

Petitioner pled guilty to his earlier offenses without knowing that those convictions could later be used to enhance his sentence on a future conviction does not violate due process.

Petitioner further argues that pursuant to the plea agreements, the state agreed to a specific sentence for those prior offenses, and breaches those plea agreements "by giving him greater punishment on his prior convictions than the agreement stated." (Pet. 27.) As discussed above, the enhancement does not alter or increase Petitioner's sentence for the prior convictions because such enhancement is not punishment for his prior offenses, but rather his current ones. Consequently, the enhancement of Petitioner's current sentence does not breach any agreements pertaining to the sentence on his prior convictions. The California Supreme Court's decision denying this claim was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner's due process claim must be denied.

### E.    Cruel and Unusual Punishment

In his fifth claim for habeas relief, Petitioner argues that his enhanced sentence of "[t]wo 25-years-to-life sentences, plus 40 years is plainly unreasonable for the offenses committed, which are non-violent offense of burglary," and amounts to cruel and unusual punishment in violation of the Eighth Amendment. (Pet. 31.)  Petitioner states that his sentence requires him to serve at least fifty years before becoming eligible for parole. *Id.* at 33. Petitioner identifies himself as an HIV-positive inmate, and characterizes his sentence "as a death sentence mandated for him to die in prison, and or the equivalent of a life sentence without the possibility of ever achieving parole." *Id.* Petitioner argues that the harshness of his sentence is grossly disproportionate to the non-violent nature of his crimes. *Id.* at 35  (citing *Solem v. Helm*, 463 U.S. 277 (1983)).

### i.    Legal Standard

The Eight Amendment forbids only extreme sentences which are grossly disproportionate to the crime. *See Harmelin v. Michigan*, 501 U.S. 957, 997-1001

(1991).  In judging the appropriateness of a sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'"  *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980)).

The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists.  *Ewing v. California*, 538 U.S. 11, 25 (2003) (upholding 25 year-to-life sentence for recidivist convicted of grand theft); *Rummel*, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); *Bland*, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault); *Alford v. Rolfs*, 867 F.2d 1216, 1221-23 (9th Cir. 1989) (upholding life sentence with possibility of parole for possession of stolen property worth $17,000 and having three prior non-violent convictions, including possession of a controlled substance and forgery).

### ii.   Analysis

The jury found true the allegations of Petitioner's ten prior convictions for residential burglaries, charged as strikes, and eight prior serious felony convictions for purposes of five-year enhancements.  (Rep. Tr. 512-21; 554-56; 589-94.)  At the time of sentencing, the state prosecutor presented the Superior Court with Petitioner's prior criminal history:

> 1973 - Residential Burglary - county jail
> 1975 - Commercial Burglary - county jail
> 1975 - Grand Theft - county jail
> 1976 - Auto Burglary - county jail

1
2
3
4
5

      1976 - Grand Theft Person - county jail
      1979 - Residential Burglary - county jail
      1980 - Residential Burglary - three yrs state prison
      1982 - Residential Burglary - three yrs state prison
      1986 - Residential Burglary x 2 - seven yrs, four mo. state prison
      1987 - Residential Burglary x 3 - eight mos.state prison consecutive to
      1986 sentence
      1992 - Residential Burglary - nine years state prison; only one of seven
      possible enhancement priors were charged.

6
7

(Clerk Tr. 625 (People's Sentencing Memorandum and Response to Defendant's

Motion to Dismiss Prior Strike Convictions at 7)).

8
9
10
11
12
13
14
15
16
17
18
19

Although Petitioner characterizes these offenses as non-violent, the state

considers burglary of a residence to be "'so inherently dangerous that persons who

repeatedly commit this type of offense should be punished as harshly as violent

recidivists.'" (Clerk Tr. 620 (People's Sentencing Memorandum at 2 (citing *People v.

Cruz*, 13 Cal.4th 764, 773 (1996)); Rep. Tr. 568.)   The Superior Court stated at

sentencing that an act of residential burglary "is incredibly violent toward the personal

freedoms and living space of the victim of those crimes."  (Rep. Tr. 570-71.)  The

Superior Court therefore denied probation and sentenced Petitioner to the term of twenty-

five years to life for each count of burglary, and an enhancement of forty years pursuant

to sections 667(A) and 1192.7 of the Penal Code for the prior strikes.  *Id.* at 571. The

Superior Court also struck the section 667.5(B) prior prison term enhancements pursuant

to section 1385 due to Petitioner's health.  *Id.*

20
21
22
23
24
25
26

Petitioner is not simply being punished for his most recent conviction, which is

itself serious in nature; he is also being punished for his recidivism.  Petitioner has an

extensive criminal history dating back to 1973.  Respondent points out that Petitioner

previously has  received leniency from the State, when he was convicted in 1992 of

residential burglary and charged with only one of seven available enhancement priors.

(Opp. 25.)  Respondent argues that Petitioner then received only a nine-year sentence,

rather than the potential thirty-five year sentence, making it possible for Petitioner to

27
28

13

commit the additional burglaries for which he now is convicted.  *Id.*

Given Petitioner's extensive criminal recidivism, it cannot be said that Petitioner's sentence of ninety years-to-life is grossly disproportionate.  *See Harmelin*, 501 U.S. at 997-1001.  Here, Petitioner was not sentenced to life without the possibility of parole, nor was his crime "one of the most passive felonies a person could commit." *Cf. Solem*, 463 U.S. at 296-97 (life sentence without parole held grossly disproportionate to crime of writing bad check with prior convictions for burglary, false pretenses, grand larceny and drunk driving).  Additionally, it was well within the trial court's domain to impose the enhanced sentence based upon Petitioner's continued criminal activity.  *See Ewing v. California*, 538 U.S. 11, 25 (2003).  Therefore,  the California Supreme Court's denial was not contrary to, or an unreasonable application of, clearly established federal law at the time the State court rendered its decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  For this reason, Petitioner's claim that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment must be denied.

### F.   **Vague and Overbroad**

In his sixth claim, Petitioner argues that the Three Strikes law is unconstitutionally vague and overbroad. The trial court sentenced Petitioner under California's "Three Strikes" law, section 667 of the California Penal Code, which Petitioner construes as limiting "strikes" to offenses after March 7, 1994 when the law was enacted:

> The determination of whether a prior conviction is a prior felony conviction for purposes of subdivisions (b) to (I), inclusive, shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor.

Cal. Penal Code § 667(d)(1).  Petitioner argues that the statute requires that a prior offense be determined to be a strike at the time of the prior conviction, and that his prior convictions were not determined to be strikes at the time he was convicted.  (Pet. 45-47.)

14

Petitioner claims that the statutory language lacks sufficient certainty so as to provide notice of what is prohibited, in violation of his right to due process. *Id.* at 47-48.

State courts have upheld this provision of the Three Strikes law to apply to prior felony convictions predating the law's enactment. *See People v. Reed*, 33 Cal. App. 4th 1608, 1611-12 (1995) ("[t]he basic purpose of such legislation--the deterrence of recidivism--would be frustrated by a construction which did not take account of prior criminal conduct predating the legislation's enactment.") (citing *People v. Jackson*, 37 Cal. 3d 826, 833 (1985)). *See also People v. Askey*, 49 Cal. App. 4th 381, 386-87 (1996) (Three Strikes law gave adequate notice of penalty to be imposed) (citing Penal Code section 667(e)).

Section 667(e) of the Penal Code provides, in part, as follows:

> (1) If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction.
>
> (2)(A) If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:
> (I) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.
> (ii) Imprisonment in the state prison for 25 years.
> (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any [applicable] enhancement. . . .

Penal Code § 667(e)(1) and (2)(A).

The Court finds that the Three Strikes sentencing provision gives "a person of ordinary intelligence fair notice that it would apply to the conduct contemplated," namely, that if one previously has been convicted of a felony, he will be sentenced to an enhanced prison term if convicted of another felony. *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997). Accordingly, the Court concludes that the State court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly

15

1   established federal law.  Petitioner's claim is therefore denied.

2   **II.   Denial of Motion for Competency Hearing**

3          In his seventh claim, Petitioner contends that the trial court erred by failing to

4   appoint an independent expert when adjudicating Petitioner's competence to stand trial.

5   Petitioner postures that the court denied his request for a second competency hearing

6   after determining that he had been previously found competent and that there was no

7   change in circumstances since the last report; yet, he argues, the trial court called Dr.

8   Estrin, a general practitioner, and conducted a "half-measure" hearing.  (Pet. 66-68.)

9   Petitioner claims that the trial court committed reversible (or prejudicial) error by not

10  holding a full competency hearing with the benefit of expert testimony.  Petitioner

11  further claims that the trial court erred by finding no change in circumstances to require

12  another competency hearing.  *Id.* at 69-85.

13         Where, as here, the highest state court decision to reach the merits issued a

14  summary opinion which does not explain the rationale of its decision, federal court

15  review under § 2254(d) is of the last explained state court opinion to reach the merits.

16  *See, e.g., Bains v. Cambra*, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000) (reviewing

17  opinion of California Court of Appeal in deciding whether to grant habeas relief under §

18  2254(d)).  In this case, the last explained state court opinion to address the merits of

19  Petitioner's claim is the opinion of the California Court of Appeal affirming the trial

20  court's judgment on direct appeal.

21         **A.   Legal Standard**

22         The test for competence to stand trial is whether the defendant "has sufficient

23  present ability to consult with his lawyer with a reasonable degree of rational

24  understanding – whether he has a rational as well as factual understanding of the

25  proceedings against him."  *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) (citing

26  *Dusky v. United States*, 362 U.S. 402, 402 (1960), and *Chavez v. United States*, 656 F.2d

27

28                                              16

512, 518 (9th Cir. 1981)), *cert. denied*, 474 U.S. 1085 (1986). Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994); *see also Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004). A good faith doubt about a defendant's competence arises only if there is substantial evidence of incompetence. *See Cacoperdo*, 37 F.3d at 510 (denial of motion for psychiatric evaluation did not render trial fundamentally unfair where petitioner made single conclusory allegation he suffered from mental illness); *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (when a trial court is presented with evidence that creates a "bona fide doubt" about the defendant's competency to stand trial, due process requires that the court hold a competency hearing). Several factors are relevant to determining whether a hearing is necessary, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. *See Loyola-Dominguez*, 125 F.3d at 1318 (citing *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). Even one of these factors standing alone may, in some circumstances, be sufficient to create a reasonable doubt regarding the defendant's competence. *Id.* When considering a claim that the trial court should have held a competency hearing, the habeas court considers only the information that was before the state trial court. *See Amaya-Ruiz v. Stewart*, 121 F. 3d 486, 489 (9th Cir. 1997); *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir.), *cert. denied*, 510 U.S. 878 (1993).

**B.   <u>Analysis</u>**

The Court of Appeal reviewed the trial court's denial of Petitioner's motion for a second competency hearing pursuant to California Penal Code section 1368. The Court of Appeal rejected Petitioner's argument that the trial court's calling of Dr. Estrin to testify amounts to substantial evidence of doubt as to Petitioner's competence. Rather,

1    the Court of Appeal found that Petitioner put his medical condition at issue and that the

2    trial court was entitled to hear testimony from Petitioner's caretakers about his

3    complaints of pneumonia.  (March 14, 2002 slip op. at 8.)  After Petitioner objected to

4    Nurse Garza's testimony as hearsay, the trial court called Dr. Estrin to testify as to

5    Petitioner's medical condition out of caution arising from any doubts the trial court might

6    have held about its earlier ruling that Garza's testimony would be sufficient.  *Id.* at 9.

7    After hearing Dr. Estrin's testimony, the trial court ruled that "there is no medical reason

8    why the defendant cannot continue with the trial."  (Rep. Tr. 163.)

9         Furthermore, the Court of Appeal found no merit to Petitioner's claim that he

10   presented a substantial change of circumstances giving rise to a serious doubt about the

11   validity of the competency finding by Dr. Cook on February 17, 1999.  *See* March 14,

12   2002 slip op. at 4 (citing *People v. Marshall*, 15 Cal. 4th 1, 33 (1997) (where competency

13   hearing has already been held, trial court is not required to conduct a second hearing

14   unless presented with substantial change of circumstances or with new evidence that

15   gives rise to serious doubt about validity of the competency finding)).  Although

16   Petitioner cited his belief in a conspiracy and his AIDS condition as new circumstances,

17   the Court of Appeal held that neither of those conditions was sufficient to constitute

18   substantial evidence raising doubt as to his competency. (March 14, 2002 slip op. at 9.)

19   In denying the motion for the second competency hearing, the trial court reviewed Dr.

20   Cook's report and noted that "[n]o reasons were disclosed during the in-camera

21   proceedings as to why any circumstances have changed since that report was issued."

22   (Rep. Tr. 163.)  The trial court further observed from the beginning of the trial that

23   Petitioner was actively involved in jury selection and conferred with his attorney, leading

24   the court to believe that Petitioner was actively participating in his case.  *Id.*

25        The state court's denial of a second competency hearing was not contrary to, or an

26   unreasonable application of, clearly established Supreme Court precedent.  Petitioner's

27

28                                          18

1   claim is therefore denied.

2   **III.   Motion to Substitute Counsel**

3         In his eighth claim, Petitioner argues that the trial court erred by denying his

4   October 13, 1999 motion to discharge appointed counsel and substitute another attorney

5   under *People v. Marsden*, 2 Cal. 3d 118 (1970).[1]   The Court of Appeal summarized the

6   relevant facts as follows:

7               Defendant filed the motion in question on October 13, 1999, the day after
        the trial court denied his competency motion.  He generally claimed that trial
8       counsel was conspiring with the trial court and prosecution to convict him.  At the
        hearing, the trial court asked defendant for specific evidence as to why he
9       believed defense counsel was part of such a conspiracy.  Defendant offered no
        evidence.  Defense counsel denied being part of such a conspiracy; he opined that
10      defendant was AIDS-related delusional.  The trial court denied the motion.  It
        explained: "It will deny the motion ... [finding] that there's not been specific
11      reasons stated by Mr. Holmes to cause the Court to be concerned that there is a
        substantial impairment in the attorney/client relationship."

12

13  March 14, 2002 slip op. at 11.

14        In reviewing the trial court's denial of Petitioner's *Marsden* motion, the Court of

15  Appeal found that Petitioner failed to give specific facts to support the motion and found

16  no abuse of discretion in the trial court's ruling.

17  **A.   Legal Standard**

18        In conducting a federal habeas review based on a denial of a motion to

19  substitute counsel, the principle inquiry is whether the denial of Petitioner's motion

20  violated his Sixth Amendment right to counsel.  *See Schell v. Witek*, 218 F.3d 1017,

21  1024-25 (9th Cir. 2000) (en banc) (overruling earlier circuit precedent that had stated that

22  habeas court's inquiry was whether the state court's denial of the motion was an abuse of

23

24  ──────────────

25        1   *People v. Marsden*, 2 Cal. 3d 118 (1970), requires the trial court to permit a
    criminal defendant requesting substitution of counsel to specify the reasons for his request
26  and generally to hold a hearing.  This California rule substantially parallels the one
    prescribed by the Ninth Circuit in *Hudson v. Rushen*, 686 F.2d at 829.  *See Chavez v. Pulley*,
27  623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

28                                          19

discretion). More specifically, the habeas court must ask whether the trial court's denial "actually violated [Petitioner's] constitutional rights in that the conflict between [Petitioner] and his counsel became so great that it resulted in a total lack of communication or other significant impediment that resulted in an attorney-client relationship which fell short of what is required by the Sixth Amendment." *Id* at 1026.

Federal law provides that a criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. *See Wheat v. United States*, 486 U.S. 153, 159 (1988). The Sixth Amendment guarantees effective assistance of counsel, "not a meaningful relationship" between an accused and his counsel. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983). However, to compel a criminal defendant to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive the defendant of counsel. *See United States v. Moore*, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (testimony by defendant and counsel evidenced irreconcilable conflict amounting to breakdown of attorney-client relationship). In evaluating a trial court's denial of a motion for new counsel, a federal habeas court considers a number of factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir 1982).

**B.    Analysis**

This Court looks to the analysis of the Court of Appeal in evaluating Petitioner's claim. *Lajoie,* 217 F.3d at 669 n.7. The Court of Appeal considered the timing of the motion, which Petitioner filed the day after the trial court denied his competency motion. The Court of Appeal further noted that the trial court gave Petitioner an opportunity to give specific evidence as to why he believed his attorney was part of a conspiracy to convict him, and that he offered no evidence, although his attorney opined that Petitioner

was suffering from AIDS-related delusion.[2]  (March 14, 2002 slip op. at 11.)  The Court

of Appeal also quoted the trial court's finding that Petitioner gave no specific reasons for

the Court to be concerned about a substantial impairment in the attorney/client

relationship.  *Id.*   The Court of Appeal's finding that the trial court did not abuse its

discretion in denying Petitioner's *Marsden* motion is not contrary to, or an unreasonable

application of, clearly established federal law.  Petitioner's claim is therefore denied.

## IV.   **Motion for Self-Representation**

In his ninth claim for habeas relief, Petitioner contends that the trial court erred in

denying his motion for self-representation pursuant to *Faretta v. California*, 422 U.S.

806, 835 (1975).  Defendant made his *Faretta* motion on October 4, 1999, the second

day of trial, just before jury selection.  March 14, 2002 slip op. at 11.  The trial court

denied the motion as untimely and made in bad faith for the purpose of delay.  (Pet. 89-

90, quoting Rep. Tr. 14-15.)  Petitioner argues that his *Faretta* motion was timely under

federal law, which he contends deems a motion timely if made before the jury is

impaneled.  *See United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986) (demand for

self-representation is timely if made prior to jury selection or before jury is empaneled,

unless made for purpose of delay).  The Court of Appeal rejected Petitioner's argument

that the state court should adopt Petitioner's reading of federal law.  (March 14, 2002 slip

op. at 13, citing *People v. Burton*, 48 Cal. 3d 843, 852-54 (1989) (a *Faretta* motion must

be made "within a reasonable time prior to the commencement of trial."))

### A.   **Legal Standard**

A criminal defendant has a Sixth Amendment right to self-representation.  *See*

*Faretta*, 422 U.S. at 832.  However, a defendant's decision to represent himself and

---

[2]   The Court of Appeal earlier found, with respect to the request for a competency
proceeding, that "the trial court was not required to credit counsel's opinion given that
nothing in the record qualified counsel to give a medical diagnosis."  (March 14, 2002 slip
op. at 9.)

1   waive the right to counsel must be unequivocal, knowing and intelligent, timely, and not

2   for purposes of securing delay.  *See id.* at 835.  Although no Supreme Court case has

3   directly addressed the timing of a request for self-representation, the Ninth Circuit has

4   held that the holding in *Faretta* indirectly incorporated a timing element, namely, that

5   denying a request for self-representation made "weeks before trial" deprived Faretta of

6   his constitutional right to conduct his own defense.  *Marshall v. Taylor*, 395 F.3d 1058,

7   1060-61 (9th Cir. 2005).  "Because the Supreme Court has not clearly established when a

8   *Faretta* request is untimely, other courts are free to do so as long as their standards

9   comport with the Supreme Court's holding that a request 'weeks before trial' is timely."

10  *Id.* at 1061.

11          **B.       Analysis**

12          This Court looks to the analysis of the Court of Appeal in evaluating Petitioner's

13  claim.  *Lajoie,* 217 F.3d at 669 n.7.  The Court of Appeal relied on the *Burton* ruling to

14  find that Petitioner's *Faretta* motion was untimely.  (March 14, 2002 slip op. at 13.)

15  Because the timing of Petitioner's motion fell well inside the "weeks before trial"

16  standard for timeliness established by *Faretta*, the Court of Appeal's finding of

17  untimeliness complies with Supreme Court precedent.  *Marshall*, 395 F.3d at 1061.

18  Therefore, the Court of Appeal's finding that the trial court did not err in denying

19  Petitioner's *Faretta* motion is not contrary to, or an unreasonable application of, clearly

20  established federal law.  Petitioner's claim is therefore denied.

21  **V.     Motion to Suppress Eyewitness Identification Evidence**

22          In his tenth claim for a writ of habeas corpus, Petitioner contends that the trial

23  court committed prejudicial error by denying his motion to suppress Linda Marsh's

24  eyewitness identification testimony, in violation of his due process right to a fair trial.

25  The Court of Appeal summarized the relevant facts as follows:

26          Defendant filed a written motion to suppress Marsh's testimony.  He argued that
            the identification at the preliminary hearing was impermissibly suggestive "given

27

28                                              22

the fact [that defendant] was the only African-American in court, he was wearing jail clothing, [and] he was shackled." He added that six months had elapsed between the crime and preliminary hearing, Marsh had identified someone else in the photo lineup, and "the amount of time of the original encounter of approximately ten seconds all lead to a high suggestiveness and misidentification of [defendant] at the preliminary hearing." The trial court denied the motion. It commented that defendant's points implicated the weight of the evidence rather than constitutional principles. The trial court was manifestly correct.

(March 14, 2002 slip op. at 14-15.)

### A.    Legal Standard

A defendant is denied due process of law if identification procedures are so unduly suggestive as to give rise to a substantial likelihood of mistaken identification. *See Neil v. Biggers*, 409 U.S. 188, 196-98 (1972); *United States v. Jones*, 84 F.3d 1206, 1209 (9th Cir. 1996); *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985).

The admissibility of identification testimony depends on whether the identification procedure was unduly suggestive and unnecessary, and, if so, whether the identification itself was nevertheless reliable under the totality of the circumstances. *Neil*, 409 U.S. at 196-97. A court should consider the following factors in determining whether an identification is reliable even though the confrontation procedure was suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the pretrial identification; and (5) the length of time between the crime and the pretrial identification. *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977); *Neil*, 409 U.S. at 199-200. A sufficiently reliable identification presents "no substantial likelihood of misidentification," and the reliability of the confrontation procedures may properly be argued to the jury. *Neil*, 409 U.S. at 199, 201.

### B.    Analysis

This Court looks to the analysis of the Court of Appeal in evaluating Petitioner's claim. *Lajoie,* 217 F.3d at 669 n.7. The Court of Appeal applied substantially the same

23

standard of review set forth in *Manson* on the question of the reliability of the identification procedure.  (March 14, 2002 slip op. at 13..)  The Court of Appeal found that Petitioner made no argument that the state improperly suggested anything to Marsh before she identified him in court, but only argued that the preliminary hearing amounted to a single person show-up where he was the only African-American in court and wore jail clothes and shackles.  (March 14, 2002 slip op. at 15.)  The Court of Appeal found that Petitioner was free to argue at trial that Marsh's identification was unreliable because of those factors, as well as the stipulated fact that Marsh had been shown a photo lineup and selected someone other than Petitioner.  (Rep. Tr. 42-43.)  The Court of Appeal determined that these circumstances do not implicate due process.  *Id.*

The Court of Appeal considered the totality of the circumstances around Marsh's identification, and found that Petitioner failed to demonstrate that the circumstances were unduly suggestive.  The admission of evidence of a showup without more does not violate due process.  *Neil*, 409 U.S. at 198.  The state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner's claim is therefore denied.

## VI.   **Objection to Expert Fingerprint Testimony**

In his eleventh claim for habeas relief, Petitioner contends that the trial court erred in overruling his hearsay objection to the testimony of Phyllis Dawkins-Thames, the state's fingerprint expert, that another expert in her office agreed with her analysis. Thames testified that she provided the second independent evaluation on the case, and that the first examiner's evaluation was consistent with hers.  (Rep. Tr. 335-36.) Petitioner argues that the error in admitting Thames' hearsay testimony had cumulative prejudicial effect with the error in failing to suppress Marsh's identification.  (Pet. 126.) The Court of Appeal did not address the merits of this claim because it found no error in the Marsh identification, and therefore no prejudice in cumulative effect.  (March 14,

2002 slip op. at 16.)

### A.  Legal Standard

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986).  Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.  *See Jammal*, 926 F.2d at 919 (citing *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983), *cert. denied*, 469 U.S. 838 (1984)).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass,* 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990.  In order to obtain habeas relief on the basis of an evidentiary error, Petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  He would have to show that the error had "'a substantial and injurious effect' on the verdict.'"  *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (citing *Brecht*, 507 U.S. at 623).

### B.  Analysis

Although the Court of Appeal found no cumulative prejudicial effect of Thames' testimony in conjunction with the eyewitness identification, the court gave no reasoned

opinion as to Petitioner's claim of prejudicial error in overruling the hearsay objection. Therefore the Court must review the record independently to determine whether the State court's decision as to the hearsay ruling was objectively reasonable. *See Himes*, 336 F.3d at 853.

At trial, defense counsel objected to Thames' testimony on the grounds that her testimony as to the verification fingerprint analysis performed by other experts in her office amounted to hearsay. The trial court overruled the objection. (Rep. Tr. 335-36, 386.) Assuming, arguendo, that the trial court erred by admitting this testimony, Petitioner makes no showing that this error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. Thames' reference to another analyst constituted only a small portion of her testimony, which discussed at length her qualifications, her method of analysis and the basis for her findings. (Rep. Tr. 315-347.) Furthermore, defense counsel had a full opportunity to cross-examine Thames. *Id.* at 347-381. This Court finds that the admission of Thames' testimony did not render Petitioner's trial so arbitrary and fundamentally unfair that it violated federal due process. *See Jammal*, 926 F.2d at 920. Accordingly, the Court concludes that the State court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner's claim is therefore denied.

## VII.    Ineffective Assistance of Counsel

In his twelfth claim, Petitioner asserts ineffective assistance of counsel at trial. Petitioner claims that his attorney did not object to allowing the jury to hear the court's finding that the state's fingerprint analyst was qualified as an expert. Petitioner also claims that his attorney failed to ask the court to instruct the jury to give no weight to its ruling qualifying Thames as an expert. Petitioner contends that these errors had cumulative prejudicial effect on the jury's guilty verdict on Count One. (Pet. 128, 136.)

### A.    __Legal Standard__

26

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

**B.    Analysis**

The Court of Appeal found that Petitioner claimed cumulative prejudicial effect of ineffective assistance of counsel with other errors, and having found no error in the eyewitness identification issue, declined to further consider Petitioner's ineffective assistance of counsel claim. (March 14, 2002 slip op. at 16.) Therefore the Court must review the record independently to determine whether the State court's denial of this claim was objectively reasonable. *See Himes*, 336 F.3d at 853.

Petitioner argues that his trial attorney's performance was deficient because he failed to object when the trial court ruled, in the jury's presence, that the fingerprint analyst was qualified as an expert, and because he did not request that the jury be

27

instructed to give no weight to the court's ruling.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Here, Petitioner's attorney conducted voir dire of the fingerprint analyst before the trial court made its ruling qualifying the analyst as an expert.  (Rep. Tr. 321-31.)  The Court finds that defense counsel's decision to conduct the voir dire in the jury's presence was not unreasonable, as it may have been a calculated opportunity to question the analyst and raise doubts about her credibility, as defense counsel later remarked in closing argument (Rep. Tr. 478-80).  *See U.S. v. Mendoza-Paz*, 286 F.3d 1104, 1113 (9th Cir.), *cert. denied,* 537 U.S. 1038 (2002) (preliminary inquiry into relevance and reliability of expert not required to be held outside presence of jury).

Petitioner argues that sections 402 and 405 of the California Evidence Code prohibits jury consideration of a finding of expert witness qualification, and that his trial counsel's failures could not be reasonable.  (Pet. 131-35.)  Section 402, however, gives the trial court discretion to conduct an admissibility hearing outside the presence of the jury, unless the admissibility of a defendant's confession or admission is at issue.  Cal. Evid. Code § 402(b).  Furthermore, section 405 requires the trial court to determine the existence of a preliminary fact, such as qualification of an expert witness, which is not to be determined by the jury.  Cal. Evid. Code Ann. §  405(a) and Comment.  *See* Cal. Prac. Guide Civ. Trials & Ev. § 11:82 (trial court has discretion to conduct voir dire out of jury's presence).  Section 405(b) prohibits the jury from being informed of the court's determination as to preliminary fact only if it is also a fact in issue in the action.  Here, the expert's qualification was not a fact in issue that the jury would have to decide, and the voir dire examination was not required to be withheld from the jury under section 405(b).  *Cf.* Cal. Evid. Code Ann. § 405(b) and Comment (where a preliminary fact coincides with an issue involved in the merits of the case, subdivision (b) "prohibits a judge from informing the jury how he decided a question under Section 405 that the jury

28

must ultimately resolve on the merits.")  Therefore, defense counsel's failures to object to the court's ruling in the jury's presence or to request a jury instruction as to that ruling do not fall below an objective standard of reasonableness, and do not establish the first prong of deficiency under *Strickland*.

It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if Petitioner cannot even establish incompetence under the first prong.  *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  Petitioner argues that his ineffective assistance of counsel had cumulative prejudicial effect with the other alleged trial errors.  Finding no prejudicial error in either the eyewitness identification claim or the fingerprint expert's hearsay testimony claim, the Court concludes that the State court's denial of the ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner's claim is therefore denied.

**VIII.   Trial Court Did Not Inquire Why Defense Expert Was Not Called**

In his thirteenth claim for relief, Petitioner argues that he made several *Marsden* motions complaining that he wanted to present expert fingerprint testimony, and that the trial court failed to ask his attorney why he had not presented expert testimony on fingerprint evidence, or had not moved for appointment of a fingerprint expert.

**A.      Legal Standard**

As discussed in section III, *supra*, the denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas.  *See Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1475 (9th Cir.), *cert. denied*, 513 U.S. 947 (1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000).  It is well settled that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  *See id.* at 1475-76; *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990), *cert. denied*, 498 U.S. 1104

(1991); *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982), *cert. denied*, 461 U.S. 916 (1983).  The inquiry need only be as comprehensive as the circumstances reasonably would permit, however.  *See King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary).

Regardless of whether the trial court failed to question counsel about Petitioner's request for a fingerprint expert, the ultimate inquiry in a federal habeas proceeding is whether the Petitioner's Sixth Amendment right to counsel was violated.  *Schell v. Witek*, 218 F.3d 1017, 1024-25 (9th Cir. 2000).  That is, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  *Id.* at 1026.

**B.    Analysis**

Respondent does not refute Petitioner's assertion that there the trial court did not question counsel as to why a defense fingerprint expert was not called.  The question presented on federal habeas, however, is whether the trial court's denial of the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  *Schell*, 218 F.3d at 1026.  While Petitioner indicates he was dissatisfied with counsel, he fails to allege that there was any lack of communication or irreconcilable differences between the two of them.  This case is distinguishable from *Schell*, where the Ninth Circuit reversed the denial of Schell's habeas petition, and remanded for an evidentiary hearing on the alleged conflict between Schell and his attorney.  There, the trial court neither held a hearing nor ruled on the defendant's *Marsden* motion.  Here, by contrast, Petitioner concedes that the

trial court gave him an opportunity to be heard on his request for a fingerprint expert before denying his *Marsden* motion. *See* Pet. 140-41. The Court finds that Petitioner was not denied his Sixth Amendment right to counsel by the trial court's failure to question his attorney about a fingerprint expert.

Furthermore, Petitioner fails to show the requisite prejudice or impediment from the attorney-client relationship that would violate the Sixth Amendment. *Schell*, 218 F.3d at 1028. ("If the serious conflict did not rise to the level of a constructive denial of counsel, [petitioner] would have to prove he was prejudiced by the conflict.") The state appellate court addressed the issue of prejudice in the context of the question of state law raised by Petitioner on direct appeal as to whether the trial court had a duty to inquire of trial counsel why he had not secured a fingerprint expert to testify. Assuming arguendo that such a limited duty existed, the Court of Appeal held under state law as follows:

> [I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for counsel's conduct toward his client is necessary to determine whether counsel can provide adequate representation. Further, that a defendant disagrees with the trial preparation and strategy adopted by his appointed counsel does not trigger any duty of inquiry by the trial court.

> Here, defendant at no time offered that a fingerprint expert would potentially exonerate him. At one of the *Marsden* hearings, defendant exclaimed: "the motions are needed because I have the fingerprints, that's only four point." We glean that defendant believed that the prosecutor's fingerprint analyst had identified his prints on the basis of 4 points of comparison when 12 points were required. But, if defendant was correct, the point implicates the credibility of the prosecutor's fingerprint analyst rather than defendant's exoneration. [Footnote 4: The prosector's fingerprint analyst had identified defendant's fingerprints on the basis of in excess of eight points of comparison. She also testified that there are no minimum number of characteristics required for an identification, though she has never been satisfied with an identification based on less than eight points of comparison.] Since trial counsel can initially attack credibility on cross-examination, defendant's disagreement is, in reality, with trial counsel's trial preparation and strategy, which does not trigger any duty of inquiry by the trial court."

(March 14, 2002 slip op. at 17-18) (citations omitted). Similarly, the Court finds that Petitioner was not prejudiced by the conflict with his attorney over hiring a fingerprint expert.

The Court finds that the conflict between Petitioner and his attorney was not so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment.  Accordingly, the Court concludes that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner's claim is therefore denied.

## IX.   Prior Burglary Conviction

In his fourteenth claim for relief, Petitioner contends that there was insufficient evidence to support the jury's finding that he had been convicted of burglary of an inhabited dwelling house in Los Angeles County on May 9, 1980, case number A588089.  This prior conviction was charged as a strike, pursuant to California Penal Code § 1170.12, and a five-year prior, pursuant to California Penal Code § 667.  Petitioner challenges the jury's finding on the strike and sentence enhancement allegations on the grounds that the underlying record does not show that the jury's guilty verdict in case number A588089 was based on entry of an inhabited dwelling house.

### A.   Legal Standard

In a federal habeas corpus proceeding, evidence of the prior conviction is sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the fact of the prior conviction beyond a reasonable doubt.  *United States v. Okafor,* 285 F.3d 842, 847-48 (9th Cir. 2002) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### B.   Analysis

The Court of Appeal applied the *Jackson* standard, which is the standard of review in California for challenges to a conviction based on insufficient evidence. (March 14, 2002 slip op. 18.)  The Court of Appeal found the following evidence was presented in support of the prior strike and enhancement allegation:

For purposes of the Three Strikes Law and a five-year enhancement,

defendant was charged with a prior residential burglary conviction arising from Los Angeles County (case No. A588089). To prove the charge, the prosecutor introduced the following: the complaint, which alleged that defendant committed a burglary on January 2, 1980, at the residence of Jerry K. Howard; the order holding defendant to answer; the information, which charged defendant with committing a burglary on January 2, 1980, at the residence of Jerry K. Howard; the abstract of judgment, which noted that defendant was convicted by a jury of burglary in violation of section 459 and sentenced to the upper term of three years; and the clerk's minutes, which also denote the sentence.

*Id.*

The Court of Appeal rejected Petitioner's argument that his three-year sentence for the prior conviction indicates that he was convicted of second degree burglary, and that the allegation in the complaint and the charge in the information are insufficient to prove the nature of the prior burglary as residential. The Court of Appeal held as follows:

Here, as in [*People v.*] *Guerrero* [44 Cal. 3d 343 (1988)], the documents introduced by the prosecution included an information showing that defendant had been charged with committing a residential burglary. An information may only charge an offense if the offense has been "shown by the evidence taken at the preliminary examination." ([Cal. Penal Code] § 1009.) Because (1) a preliminary hearing transcript is considered a reliable reflection of the nature of a prior conviction, even in the absence of an admission by the defendant that every fact demonstrated at that hearing was true, and (2) an information must be based on the evidence presented at the preliminary hearing, an information is at least as reliable a reflection of the nature of the prior conviction as a preliminary hearing transcript. The simple fact is that, even though defendant did not plead guilty "as charged," a trier of fact could reasonably infer that the nature of the burglary conviction was accurately described in the information. The amended information and judgment were therefore sufficient to support the jury's finding.

*Id.* at 22-23.

The Court of Appeal applied the correct standard of review and determined that the evidence was sufficient to support the jury's finding on the strike and enhancement allegations. Accordingly, the Court concludes that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner's claim is therefore denied.

## X.   Hearsay Objection to Admission of Probation Report

In his fifteenth claim for relief, Petitioner contends that the trial court committed

33

prejudicial error in overruling his hearsay objection to a probation report which was offered to prove an allegation of a prior residential burglary conviction in 1982 in San Mateo County, case number C-11564.  He contends that the error resulted in the jury's finding as true the strike and enhancement allegations of that prior conviction.

### A.   Legal Standard

As discussed in section VI, *supra,* the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  *See Walters v. Maass,* 45 F.3d 1355, 1357 (9th Cir. 1995).  In order to obtain habeas relief on the basis of an evidentiary error, Petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht, i.e.*, that it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.

### B.   Analysis

The Court of Appeal found that the probation report at issue was among a package of documents introduced by the prosecutor to support the allegations of the prior San Mateo County conviction.

> This package included a probation report which stated that the records of the San Mateo Police, the records of the Menlo Park Police, and the preliminary hearing transcript provided information indicating, among other things, that defendant was seen burglarizing a residence.  Defendant interposed a hearsay objection to admission of the probation report.  The trial court overruled the objection.  Defendant argues that the trial court erred in overruling the objection.  We need not examine this issue.  Defendant concedes that the package included an information charging him with residential burglary and a judgment showing him convicted of second degree burglary, an offense that, again, at the time in question, signified a burglary committed in the daytime, whether or not residential.  As our previous analysis indicates, this evidence is sufficient to support the jury's finding.  Any error in the admission of the probation report is therefore harmless. [Citation omitted.]

(March 14, 2002 slip op. at 23.)

As with the prior Los Angeles County conviction discussed in section IX, *supra*, the Court of Appeal found that the information and judgment were sufficient to support the strike and enhancement allegations as to the San Mateo County conviction, and that

34

there was no prejudicial error in admitting the probation report over Petitioner's hearsay objection.  Under a *Brecht* analysis, the admission of hearsay evidence contained in the probation report did not substantially influence the jury's verdict because the other documents presented sufficient evidence to support the jury's true finding on the strike and enhancement allegations as to the prior conviction.  Accordingly, the Court concludes that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner's claim is therefore denied.

**XI.    Motion for Injunction**

Petitioner has filed a motion for an injunction against the Department of Corrections to forward all mail.  This motion is not properly brought before this Court on a petition for writ of habeas corpus and is DENIED (docket no. 21).

**XII.    Motion to Restart Litigation**

Petitioner has also filed motions for an order for more time in the law library, to put his case back on calendar for litigation, and to obtain legal documents (docket no. 22).  Petitioner's motions for more time in the law library and to obtain legal documents are not properly brought before this Court on a petition for writ of habeas corpus, and are DENIED.  Petitioner's motion to put case back on calendar is DENIED as moot.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  Petitioner's pending motions are also DENIED (docket nos. 21, 22).  The clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:   September 20, 2005

JEFFREY S. WHITE
United States District Judge

35